DAN ZEIDMAN, Esq. (State Bar No. 73276)
MICHELLE L. AFONT, Esq. (SBN 165450)
LAW OFFICES OF DAN ZEIDMAN
260 E. Chase Avenue, Suite 201
P.O. Box 1238
El Cajon, CA   92020
(619) 440-3232

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE HALLAK, an individual, and Additional Parties Attachment form is attached as "A" <br><br> Plaintiff, <br><br> vs. <br><br> L-3 COMMUNICATIONS CORPORATION, a corporation, L-3 COMMUNICATIONS HOLDINGS, Inc. A corporation, TITAN TRANSLATORS, a corporation, and TCS CORPORATION, a corporation, and DOES 1 through 100 inclusive, <br><br> Defendants. | Case No. 09cv1211 W CAB <br><br> DECLARATION OF DAN ZEIDMAN, ESQ. FOR PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO TRANSFER VENUE, PURSUANT TO 28 U.S.C. §1404(A) <br><br> Judge: Hon. Thomas J Whelan <br><br> Courtroom: 7 (Third Floor) <br> Date: September 14, 2009 <br><br> [NO ORAL ARGUMENT] |

Plaintiffs' Opposition to Motion to Transfer Venue

-1-


EXHIBIT A

I, Dan Zeidman, Esq., do hereby declare under penalty of perjury pursuant to the laws of the United States of America as follows:

1. I am the lead attorney of record for all Plaintiffs in both the Hallak (Rotation) case in San Diego and the Taha (Iraq Only) case in Virginia.

2. I requested about four (4) months ago all employment records of all of my clients from L-3/Titan and TCS accompanied by Authorization signed by each of my clients with their Social Security Numbers. Since we are pre-Rule 26(d), I cannot force those disclosures. However, as stated in Rule 26(d), the Defense side could have agreed to such "discovery", but for reasons known only to them, they have refused to do so. (Furthermore, I was willing to accept such an agreement with a Defense reservation of rights to continue to contest the "employee" status of my clients. I certainly did not expect the Defense to accede to anything on the merits at this early stage.)

3. I can state without question that the employment records we requested and received from our clients were sparse indeed. On the other hand, if I had access to ALL of my clients' employment records from L3/Titan and TCS, I would be in a much better position to state more facts as to the relationship between the corporations and my clients.

EXHIBIT A

4. A search of the Internet finds of TCS and L-3 finds the following:

a. TCS lists its "headquarters" in Long Beach, California.

b. L-3 has three (3) San Diego offices listed on its website.

c. L-3 has nine (9) separate business divisions located in San Diego County alone, and has offices in 17 other California cities, according to its website.

5. With regards to the "related" case issue as between the Taha Viginia case and the Hallak San Diego case, that concept must naturally be proportional. The two (2) cases are NOT factually or legally related in any significant manner, since FLSA does not apply to the Taha case, but it does apply to the Hallak case. Furthermore, the Taha Plaintiffs worked IN IRAQ itself, and the Hallak Plaintiffs worked only stateside. Thus, the two (2) cases would ostensibly be "related enough" only if they were already filed in the same courthouse. In other words, logically, it would take a lesser degree of "relatedness" if two tangentially related cases were already in the same court, but a much greater degree of "relatedness" if they were filed in courts 2000 miles apart, as in the case at bar. Thus, there is not enough "relatedness" to allow a transfer of 372 clients from California to Virginia, to be litigated with a mere 34 clients in Virginia, especially when the two (2) cases are only tangentially related in the most superficial sense. (Only 7 of the 372 Plaintiffs in Hallak are also Plaintiffs in Taha. However, that does not change the analysis, since that merely means that these 7 Iraqis worked, at different times, both in Iraq and on rotation stateside.)

EXHIBIT A

6.    Attached to my Opposition Brief as <u>Exhibit</u> "C" is an exemplar copy of the L-3 contract signed by one of my clients in the Rotation case.

7.    I have directly supervised the arduous and continuing task of my staff in keeping track of all of our clients. My staff has done a yeoman's job in organizing these clients. I have hired a Client Coordinator, LesLee Pasquill, who was the chief architect of this organization. I can therefore state with a high degree of accuracy that Exhibits "A" & "B", which are client lists, are true and correct.

Executed on September 13, 2009 at El Cajon, CA.

DAN ZEIDMAN, ESQ.

Attorney for Plaintiffs







CORPORATION

National Security Solutions

TECHNICAL & OPERATIONAL SUPPORT GROUP

April 23, 2004

Safeen Hamad
1109 East Washington Avenue
El Cajon, CA  92019

Dear Mr. Hamad:

We are impressed by your capabilities and past performance and are delighted to consider you a part of our growing team. This letter confirms an offer of employment with The Titan Corporation in the position of CAT I Arabic Linguist supporting the Technical & Operational Support (TOS) Group in the Gulf Region. This position reports to Mr. Marc Peltier, Director of Intelligence and Linguist Operations, with an anticipated start date of April 24, 2004. Should you not be able to start on this date, acceptance of this offer will only be valid until May 01, 2004. Please contact us before this date should you need to change your start date.

The starting base salary for this exempt position is $2,692.31 bi-weekly, $70,000.00 if annualized, plus $5,000.00 completion payment for 6 months of continuous service in the specified theater of operation and then after 12 months of service in the same theater of operation. Completion payment will be paid on or about your 6-month and 12-month anniversaries of your arrival into the theater of operation, not on your date of hire.  As an exempt employee, you are expected to work a minimum of 40 hours per week, however, in this position hours may vary because of the nature of the contract, have averaged 12 hours per day, 7 days per week.  Additionally you will receive hazardous duty pay, which is intended to supplement your income for hours recorded directly in support of the project on location. This will be paid on a bi-weekly basis.  The base salary, hazardous duty pay and completion payment are subject to applicable state and federal taxes.

This offer is contingent upon receipt of a task order from our government client, available funding for the task, and receipt and maintenance of all necessary government approvals and applicable clearances for working in a secure facility.  In addition, your offer is contingent upon you successfully passing a government-required medical, drug, and language screening.

Titan employees are provided excellent benefits, which include life insurance, health insurance (coverage for pre-existing medical conditions is limited under our health insurance plan), dental insurance, and long term disability. Benefits coverage is effective on the first day of the month after your start date.

Federal law requires every employer in the United States to verify that all new employees are legally eligible to work in the United States.  This verification is accomplished through completion of the I-9 Form, Employment Eligibility Verification published by the U.S. Department of Justice.  You will be required to show proof of citizenship by providing specific documentation such as a passport, or a birth certificate and a driver's license. If you feel you are going to have any problem providing such proof of eligibility, please let us know as soon as possible.

Employment at Titan is a voluntary relationship ("at-will"), between the company and each employee, and nothing in this offer of employment constitutes an express or implied contract between Titan and any employee. Please be advised that your continued employment is contingent upon your receipt and maintenance of a department of defense security clearance and any other necessary documentation, including badges or equipment provided to you that may be required to satisfy the requirements of your position.

EXHIBIT A

This initial assignment is expected to last approximately one year. However, Titan does not guarantee the term of this assignment. There may be instances where customer requirements necessitate either an extension or the termination of the assignment based on project requirements. In such cases, we will inform you of the nature of the change and work with you to satisfactorily extend or terminate your assignment, including any return to the United States to make arrangements or to return home permanently. Should you decide to terminate your employment with Titan voluntarily during your assignment, you may be liable for all travel costs associated with your return to the United States. This letter does not create a contract of employment between you and Titan for any specified period of time.

Your acceptance of our offer, and the conditions upon which it is made, will be confirmed by your signing and returning the enclosed copy of this letter, as well as the following documents: tax forms and the new hire data sheet by April 23, 2004. If you have any questions concerning this offer or any of our employee benefits, please contact Mrs. Barbara Nelson, Titan Human Resources Representative, at (703) 383-7912.

Titan Corporation offers an environment with unique opportunities for involvement, visibility, recognition, and reward. Our continued success is primarily dependent upon the high caliber and enthusiasm of our staff. We feel that you possess these qualities and have the potential of making significant contributions to our future growth and success.

Sincerely,

Carlos S. Echalar
Senior Director, Human Resources
Technical & Operational Support (TOS) Group

I have read and hereby accept employment with The Titan Corporation in accordance with the terms outlined above.

_____        _____
Name                                          Date

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL TRUMAN,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        Civil No. 07-01702
                                         )
DEWOLFF, BOBERG &                        )
ASSOCIATES, INC.,                        )
                                         )
        Defendants.                      )

### Opinion and Order

Plaintiff Michael Truman commenced this action against DeWolff, Boberg & Associates, Inc. ("DBA") alleging violations of section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. 216(b); the Pennsylvania Minimum Wage Act of 1968 ("PMWA") 43 P.S. §§ 333.101-333.115; and the Pennsylvania Wage Collection Act of 1961, 43 Pa. Cons. Stat. Ann. §§ 260.1-260.45.

Presently before the Court is Defendant's motion for Partial Summary Judgment seeking dismissal of Mr. Truman's claim that he is due overtime pay under the FLSA for the period of time he worked outside of the United States. The FLSA expressly exempts from its overtime requirements work performed by an employee outside of the United States. 29 U.S.C. § 213(f) (The provisions of sections 206, 207, 211 and 212 of this title shall not apply with respect to any employee whose services during the work week are performed in a workplace within a foreign country. . . .") Accordingly, Mr. Truman concedes that under the FLSA he is not entitled to overtime payments for the period of time he worked in foreign countries.

EXHIBIT

However, DBA filed a Reply to Mr. Truman's Response arguing for the first time that Mr. Truman was also not entitled to overtime payments under the PMWA for the period of time he worked in foreign countries. Thereafter, Mr. Truman filed a Sur-Reply opposing the imposition of Partial Summary Judgment to his PMWA claim. For the reasons stated below we will deny the motion for Partial Summary Judgment with regards to the PMWA claim.

## I. Background

Mr. Truman was an employee for DBA from February 13, 2006, to June 29, 2007. (DBA's Concise Statement of Material Facts ¶ 2). Between May 22, 2006, and November 19, 2006, Mr. Truman performed work for DBA in England. During the week of January 22, 2007, Mr. Truman performed work for DBA in Canada. (DBA's Concise Statement of Material Facts ¶ 4, 5). During his time with DBA he worked more than forty hours during some of the weeks of his employment. (Compl. ¶ 8). Mr. Truman alleges that under the FLSA, the PMWA, and the Pennsylvania Wage and Collection Act, DBA failed to pay him required overtime payments. (Compl. ¶ 12, 14).

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted only if the moving party establishes that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. Summary judgment is appropriate only when the record evidence could not lead a reasonable jury to find for the

2

EXHIBIT C

non-moving party. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248-249 (1986). In evaluating

a motion for summary judgment the court does not weigh the evidence or make credibility

determinations. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2110 (2000).

Rather than evaluating the evidence and determining the truth of the matter, the court determines

whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. In reviewing the evidence,

the court draws all reasonable inferences in favor of the non-moving party. <u>Reeves</u>, 120 S.Ct. at

1210; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

### III. Discussion

DBA seeks summary judgment as a matter of law on Mr. Truman's PMWA claim for

work he performed outside the United States. DBA argues that the PMWA overtime

requirements, like the FLSA requirements, do not apply to work performed in foreign countries.

(DBA's Reply in Support of Defendant's Motion for Partial Summary Judgment, at 2). DBA's

motion for Partial Summary Judgment does not address any claim for overtime worked while Mr.

Truman was working in the United States. (<u>Id.</u>) Mr. Truman opposes DBA's motion arguing that

the PMWA does not explicitly exempt work done in foreign countries from its overtime

provisions and at all relevant times Mr. Truman was a resident of Pennsylvania entitled to the

protections of the PMWA.

The Pennsylvania Minimum Wage Act guarantees that employees will be paid one and

one-half times their regular rate for any overtime worked. 43 P.S. § 333.104 (c). Exemptions to

this statutory provision are recorded in 43 P.S. § 333.105. Unlike the FLSA, the PMWA does

not contain an explicit exemption for work performed outside of the United States. However, the

PMWA has been construed to extend its protections to employees who work outside of

3


EXHIBIT

Pennsylvania. Friedrich v. U.S. Computer Systems, Inc., 1996 WL 32888 (E.D.Pa. Jan. 22, 1996). In Friedrich the Court permitted the PMWA to apply to Pennsylvania-based employees who perform work in states outside of Pennsylvania. 1996 WL 32888, at *8-9. Allowing employees who perform work outside of Pennsylvania to benefit from the PMWA is in accord with the PMWA's Declaration of Policy. 43 P.S. § 333.101 ("Employes employed in such occupations are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards . . . wages in such occupations are often found to bear no relation to the fair value of the services rendered"). Thus, there is nothing within the PMWA that restricts the benefits of the PMWA to work performed within the United States.

The FLSA does not preempt state minimum wage acts from offering greater protection to state employees than does the FLSA. For example, the FLSA states that, "[n]o provision of this Act . . . or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act." 29 U.S.C. § 218 (a). Additionally, several courts have found that explicit FLSA exemptions do not preempt state laws from offering state employees greater protections than FLSA. See e.g., Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1417 (9th Cir. 1990) ("We hold that [29 U.S.C.] section 213(b)(6) does not preempt California from applying the state's overtime pay laws to FLSA-exempt seamen working off the California coast."); Pennsylvania Dept. of Labor and Industry v. Whipple, 1989 WL 407328, at *3 (Pa. Com. Pl., 1989) (Overtime exemptions under FLSA "do not affect coverage under Pennsylvania Minimum Wage Act"); Ploufe v. Farm & Ranch Equip. Co., 174 Mont. 313, 320 (Mont. 1977) (holding that FLSA did not preempt Montana from regulating overtime and wages under the Montana

4

EXHIBIT C

Minimum Wages and Hours Act). In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption. <u>Baum v. Astrazeneca LP</u>, 605 F.Supp.2d 669, 674 (W.D. Pa. 2009) (finding that "[b]ecause the FLSA is a remedial act, the exemptions are typically narrowly construed").

In <u>Williams v. W.V.A. Transit Co.</u>, 472 F.2d 1258 (D.C. Cir. 1972), the Court of Appeals for the District of Columbia found that the District of Columbia Minimum Wage Act was not limited by an explicit FLSA exemption:

> [A]n employee does not lose his status of being employed in the District merely because he receives an assignment, for a relatively short period, that calls on him to spend all his time for that period at some location outside the District. Otherwise, that status would be lost or suspended through relatively isolated or occasional employment outside the District, and from the common sense of the matter we conclude that this is not the legislative intent.

472 F.2d at 1265-1266. As in <u>Williams</u>, we find that, although there is an applicable FLSA exemption, we cannot find an implied foreign work exemption in the PMWA to remove coverage from Pennsylvania residents who have been given assignments outside of Pennsylvania. If the Pennsylvania legislature had wanted to exempt foreign work from the PMWA it could have expressly included that exemption within the PMWA. <u>See Friedrich</u>, 1996 WL 32888, at *5 ("The Pennsylvania legislature enacted the PMWA to protect those employees who do not benefit from federal protection [under the FLSA].") Our conclusion is in accord with the FLSA and its regulations that permit state laws to offer greater protections than the FLSA. <u>See</u> 29 U.S.C. 218 (a) (Section 218 "expressly contemplates that workers covered by state law as well as FLSA shall have any additional benefits provided by the state law higher minimum wages; or

5


EXHIBIT C

lower maximum work week." Williams, 472 F.2d at 1261); 29 C.F.R. § 778.5 ("[n]othing in the act, the regulations or the interpretations announced by the Administrator should be taken to override or nullify the provisions" of state and local laws.)

In support of its argument that the FLSA and PMWA should have an identical analysis, DBA relies on Paul v. UPMC Health Sys., C.A. No. 06-1565, 2009 WL 699943 (W.D. Pa. Mar. 10, 2009). In Paul, the defendant argued that the plaintiff was properly classified as an administrative employee and was therefore exempt from the overtime requirements under both the FLSA or the PMWA. The Paul Court noted that the "administrative exemptions" set forth in both the FLSA and PMWA are identical, and therefore only analyzed "the applicability of the administrative exemption to plaintiff's FLSA claim," noting that "the same analysis, however, also applies to plaintiff's PMWA claim." 2009 WL 699943, at *8, n.1. The Paul Court applied an identical analysis only because both Acts contain express administrative exemptions. The Paul case does not address the circumstance when the FLSA contains an explicit exemption and the PMWA contains no corresponding exemption.

DBA's reliance on Mitchell v. Abercrombie & Fitch, No. C2-04-306, 2005 WL 1159412 (S.D. Ohio May 17, 2005) is also misplaced. The Mitchell case concerned application of the Ohio Minimum Fair Wage Standards Act to a plaintiff who not only did all of his work outside of Ohio, but also did not reside in Ohio. The Mitchell Court found that the Ohio legislature did not intend the Act to apply to workers, "who perform *no* work within the territorial limits of the State of Ohio [and that] the Commerce Clause of the United States Constitution prohibits Ohio from regulating the working conditions of a non-resident who performs work and earns wages outside of the state." 2005 WL 1159412, at *3 (emphasis added). The Mitchell Court also noted

6

EXHIBIT C

that there was "no claim that [plaintiff] ever worked for even a brief period of time in Ohio, which would change the analysis as to the applicability of Ohio law to his employment relationship." 2005 WL 1159412, at *4. Here, there is no dispute that Mr. Truman is a Pennsylvania-based employee.

## IV. Conclusion

The employer has the burden of proof of to show that an employee fits into an exemption. Baum, 605 F.Supp.2d at 674. Mr. Truman has conceded that work he performed outside of the United States is not protected by the FLSA, and thus we will grant DBA's motion in this respect. However, DBA has failed to show that Mr. Truman is an exempt employee under the PMWA for the work performed in England and Canada. Nothing within the language of the statute implies that work performed in a foreign country by a Pennsylvania resident does not deserve the same protections as work performed within Pennsylvania by the same resident and for the same company. Accordingly, we will deny the motion for partial summary judgment with regards to the PMWA claim.

An appropriate Order follows.

July 7, 2009
Date

Maurice B. Cohill, Jr.,
Senior District Judge

7



## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL TRUMAN,                    )
                                   )
    Plaintiff,                    )
                                   )
        v.                        )    Civil No. 07-01702
                                   )
DEWOLFF, BOBERG &                  )
ASSOCIATES, INC.,                  )
                                   )
    Defendants.                    )

## ORDER

AND NOW, to-wit, this ___7___ day of July, 2009, after careful consideration and for

the reasons set forth above, it is hereby ORDERED, ADJUDGED, and DECREED that

Defendant's Motion for Partial Summary Judgment be and hereby is DENIED in part and

GRANTED in part as follows:

1. Defendant's motion for partial summary judgment of Plaintiff's FLSA claim for the
period of time he worked outside of the United States be and hereby is GRANTED.

2. Defendant's motion for partial summary judgment of Plaintiff's PMWA claim for the
period of time he worked outside of the United States be and hereby is DENIED.

Maurice B. Cohill, Jr.
Senior United States District Judge

cc:    counsel of record



| Reber Taha Plaintiffs<br>Prepared by SAZ    6/24/2009<br>Total = 34    (B) = In Both Cases | | | States |
|---|---|---|---|
| 1. | 23 | Farhad Maltai | South Dakota |
| 2. | 107 | Shivan Sadi | California |
| 3. | 208 | Ranj Ahmed | California |
| 4. | 213 | Reber Taha                (B) | California |
| 5. | 294 | Sami Pauls                (B) | California |
| 6. | 297 | Mahmood Al-Naqshabandi | California |
| 7. | 299 | Deler Shamdeem | Texas |
| 8. | 312 | Swara Deloyi              (B) | California |
| 9. | 322 | Baktair Hamasaed | California |
| 10. | 323 | Safeen Hamad | California |
| 11. | 327 | Mohammed Salehi | California |
| 12. | 330 | Bewar Othmanhaji | California |
| 13. | 331 | Daham Shwani | Tennessee |
| 14. | 332 | Sapheen Barwarrie | Tennessee |
| 15. | 334 | Yassin Yassin | Tennessee |
| 16. | 335 | Mustafa Nabi | Tennessee |
| 17. | 336 | Ahmed Mohammed | California |
| 18. | 337 | Abdulla Yousify | Washington |
| 19. | 338 | Hussein Muhammed | California |
| 20. | 340 | Keyfi Mustafa | California |
| 21. | 346 | Saadi Berwary | Tennessee |
| 22. | 347 | Jeger Farok | Minnesota |
| 23. | 351 | Dilovan Mallah              (B) | California |
| 24. | 352 | Nazar Habib | Minnestoa |
| 25. | 354 | Halat Alani | Colorado |



EXHIBIT D

| 26. | 357 | Shamal Jaff | | Colorado |
|-----|-----|-------------|--|----------|
| 27. | 378 | Hafal Jawdat | | California |
| 28. | 380 | Hameed Dohuky | | California |
| 29. | 382 | Ayoub Ahmed | (B) | California |
| 30. | 325 | Salim Rawdah | (B) | California |
| 31. | 408 | Bery Ameen* | | California |
| 32. | 409 | Hanee Ameen* | | California |
| 33. | 411 | Hevris Shirwani* | (B) | California |
| 34. | 418 | Namon Abdullah* | | Tennessee |

21 =   California    (S)
 1 =   South Dakota  (F)
 1 =   Texas         (F)
 6 =   Tennessee     (F)
 2 =   Minnesota     (State) 48 Hours
 2 =   Colorado      (F)
 1 =   Washington    (F)


* = Clients not on court list


EXHIBIT D