**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| REBER TAHA, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | Case No. 1:09cv720 (JCC/JFA) |
| ) | |
| L3 COMMUNICATIONS ) | |
| CORPORATION, et al. ) | |
|     Defendant. ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants L-3 Communications Corporation ("L-3 Communications"), L-3 Communications Holdings, Inc. ("L-3 Holdings"), Titan Translators, and L-3 Services, Inc. ("L-3 Services") (collectively "Defendants"), pursuant to Federal Rule 12(b)(6) and Local Rule 7, hereby submit this reply brief in support of their motion to dismiss Plaintiffs' "Complaint For Damages For Personnel <u>Working In Iraq</u>" (emphasis in original).

## INTRODUCTION

Plaintiffs brought this action to recover overtime wages they claim were owed for work performed for L-3 Services in Iraq. Plaintiffs base their claim for overtime on federal and state statutes and several common law theories. Defendants moved to dismiss under Rule 12(b)(6) to test the sufficiency of Plaintiffs' theories. Plaintiffs now admit that their Complaint has failed its test and "Plaintiffs are requesting LEAVE TO AMEND because they do have FACTS which will properly allege viable causes of action." Docket No. 5, Plaintiff's Opposition ("Opp.") at 4 (capitalization in original). But Plaintiffs new theories fail too, thus demonstrating that any amendment would be futile.

There is, of course, no common law right to be paid overtime. Entitlement to overtime

exists only if a governing statute requires it. Plaintiffs have now admitted that the principal federal statutory basis of their claim, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), contains a specific exemption for employees who work in a foreign country, and thus have admitted that they were never entitled to overtime under the FLSA. Plaintiffs now assert instead that they were employees of the United States as defined in 5 U.S.C. § 2105, and that they are somehow entitled to overtime for that reason. However, as described herein, that argument is equally lacking in legal support, because the law is clear that employees of government contractors do not qualify as federal employees under Section 2105. As a result, there is no federal statute mandating the payment of overtime to Plaintiffs, and all claims based upon failure to pay overtime under federal law must be dismissed **with prejudice**.

Because no cognizable claims exist under federal law, Plaintiffs seek to salvage some part of their lawsuit by relying upon state overtime statutes. However, Plaintiffs have admitted that, for ten of them (*i.e.*, those not residing in California or Minnesota), there is no potentially applicable state overtime statute. For these ten, all state law claims must also be dismissed **with prejudice**. The remaining 23 Plaintiffs assert that they should be allowed to amend the Complaint to assert that the laws of California and Minnesota required overtime to be paid to them for their work in Iraq. These claims fail because the States have no power to regulate payments to workers performing federal functions overseas, and because Plaintiffs are not entitled to invoke the laws of their State of residence when the actual workplace was elsewhere.

There is simply no basis upon which to amend the Complaint.[1]

---

[1] Notably, Plaintiffs have not tendered any proposed Amended Complaint setting forth such facts which they content give rise to a plausible cause of action.

-2-

## ARGUMENT

I.    **Plaintiffs Admit That The Original Complaint Failed To State Any Cognizable Claim For Relief and Must Be Dismissed.**

Plaintiffs brought this action under the FLSA, seeking overtime for work performed "in Iraq for the benefit of the United States Military." Compl. ¶ 1.  Plaintiffs now admit that they are, in fact, "foreign employees" exempt from the FLSA under 29 U.S.C. § 213(f).  *See, e.g.*, Opp. at 2.[2]  As a result, Plaintiffs now admit that they were never entitled to the payment of overtime under the FLSA.

In addition to the FLSA, Plaintiffs based their Complaint upon "any other state's law that may apply herein, including but not limited to Virginia." Compl. ¶ 13; *see also id.* ¶¶ 15, 27. (And Plaintiffs invoke no other state law allegedly applicable to this case in any of the five causes of action in the Complaint.  *See id.* ¶¶ 12-38.)  Plaintiffs now recognize that Virginia imposes no overtime requirement beyond that set forth in the FLSA.[3]  As a result, because the Plaintiffs were not entitled to overtime, the other claims asserted (fraud, conversion, breach of the implied covenant of good faith, etc.), all of which are predicated upon L-3 Services being obligated to pay overtime, necessarily fail.

All claims brought in the original Complaint under the FLSA and Virginia law must therefore be dismissed **with prejudice**.

---

[2] *See also* Docket No. 2-2, Defendants' Memorandum in Support of the Motion to Dismiss ("Memo.") at 3-5, citing 29 U.S.C. § 213(f); *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1363 (11th Cir. 1997); *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 226 (3rd Cir. 1991); *Hodge v. Lear Siegler Servs., Inc.*, 2008 WL 2397674, *9 (D. Idaho Jun. 9, 2008); *Rozelle v. United States*, 2005 WL 6112659, at *4 (Fed. Cl. July 29, 2005); *Smith v. Raytheon Co.*, 297 F. Supp. 2d 399 (D. Mass. 2004).

[3] *See* Memo. at 5-6, citing Va. Code Ann. § 40.1-28.10.

## II.  This Court Should Deny Plaintiffs Leave To Amend Because Any Amendment Would Be Futile.

Recognizing the existing Complaint does not contain any plausible claim, Plaintiffs seek leave to amend.  But the proposed amendments still fail to state any claim upon which relief may be granted and, therefore, any such amendment would be futile.  *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).  Consequently, this Court need not grant Plaintiffs leave to file a futile First Amended Complaint.  *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (motion to dismiss may be granted without leave to amend where proposed amendment is futile); *In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379, 391 (4th Cir. 2005) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (leave to amend properly denied where proposed amendment would be futile).

### A.  No Federal Statute Requires The Payment Of Overtime To Plaintiffs.

While Plaintiffs now acknowledge that they are exempt from the FLSA, Plaintiffs contend they are nonetheless "non-exempt under 5 USC 2105." Opp. at 5.  Section 2105 defines who is a "federal employee," *i.e.*, an employee of the United States, under Title 5 of the U.S. Code.  *See Savering v. United States*, 18 Cl.Ct. 704, 706 (Ct. Cl. 1989).  Plaintiffs do not attempt to explain the connection they believe exists between qualifying as employees of the United States and a requirement that L-3 Services pay them overtime, but there is no need to reach the issue.  Plaintiffs are **not** federal employees under Section 2105.

To be considered a federal employee under 5 U.S.C. § 2105 an individual must satisfy three elements.  He or she must be: (1) appointed in the civil service; (2) engaged in the performance of a Federal function under authority of law or an Executive act; (3) subject to the

-4-

supervision of one or more of the federal employees and officers enumerated in 5 U.S.C. § 2105(a)(1).

Defendants agree that Plaintiffs were engaged in the performance of a federal function, and that they acted under the supervision of military commanders. Nevertheless, to become a federal employee, Plaintiffs must have been "appointed in the civil service." Employees of government contractors do not meet this element. *Watts v. Office of Personnel Management*, 814 F.2d 1576, 1578 (Fed. Cir. 1987) ("the requirement that the 'employee' be 'appointed' excludes one whose services are retained merely by contract."); *Curran v. OPM*, 566 F.Supp 1511 (D.D.C.), *aff'd* 735 F.2d 617 (D.C. Cir. 1983). As the Federal Circuit noted in *Watts*:

> We do not accept the proposition suggested by Watts that an individual can become a federal employee in a passive manner without appointment, or with appointment only to the service of a private carrier… The status of "employee" requires an unequivocal intention to bring an individual within the civil service.

*Id.* at 1580. As the District Court explained in *Curran*:

> Yet since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), it has been clear that there can be no employment of a federal officer until the "last act" necessary to perfect the appointment has been made. *See also United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976). Whether the "last act" is ministerial or not, the appointment requirement cannot simply be read out of the statute.

*Id.*, 566 F.Supp at 1514. In *Watts*, the plaintiff was an employee of Air America, Inc., a wholly owned subsidiary of the Central Intelligence Agency, and yet was held **not** to be a federal employee under Section 2105. *Id.*, 814 F.2d at 1578, 1580. In *Curran*, the plaintiffs were employed by Georgetown University, and performed services for the United States Army, and they were **not** employees under Section 2105. *Id.*, 566 F.Supp. at 1513. For the same reasons, Plaintiffs are **not** employees under Section 2105.

TCO 358,132,889v4 10-19-09

Because Plaintiffs are not federal employees at all under Section 2105, there is no legal

basis for Plaintiff's new assertion that their status as federal employees required Defendants to

pay them overtime. As a result, neither of the federal statutes Plaintiffs have invoked as a

predicate for their recovery of overtime actually apply in this case. Plaintiffs have failed to

identify any plausible federal claims upon which to amend.[4]

### B. Plaintiffs Have Admitted That No State Statute Requires Payment Of Overtime With Regard To Ten Plaintiffs.

Plaintiffs concede that no state law requires overtime with respect to ten (10) of the

named Plaintiffs -- all of those that reside in states other than California and Minnesota. *See*

Opp. at 9 and Exhibit D. For these plaintiffs -- Farhad Maltai, Deler Shamdeem, Daham Shwani,

Sapheen Barwarrie, Yassin Yassin, Mustafa Nabi, Abdulla Yousify, Saadi Berwary, Halat Alani,

Shamal Jaff, Namon Abdullah -- all claims must be dismissed with prejudice before the Court

even considers the applicability of the California and Minnesota wage and hour statutes.

---

[4] Even if Plaintiffs invoked the Service Contract Act ("SCA," 41 U.S.C. § 351, *et seq.*) or the Contract Work Hours and Safety Standards Act ("CWHSSA," 29 U.S.C. § 101 *et seq.*, as amended, 40 U.S.C. § 327 *et seq.*), which address wages payable to service employees working on certain federal service contracts, the SCA and the CWHSSA impose no overtime requirements over and above that required by the FLSA. *Masters v. Maryland Management Co.*, 493 F.2d 1329, 1334 (4th Cir. 1974). Furthermore, the SCA or the CWHSSA do not provide for a private right of action. *See U.S. ex rel. Sutton v. Double Day Office Services, Inc.*, 121 F.3d 531, 533 (9th Cir. 1997) ("The SCA does not confer a private right of action to employees; the Secretary of Labor has the exclusive right to enforcement.") (citing *Miscellaneous Service Workers, Drivers, & Helpers, Teamsters Local # 427 v. Philco-Ford Corp.*, 661 F.2d 776, 781 (9th Cir. 1981)); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1227-28 (D.C. Cir. 1991) (no private cause of action for violations of the SCA); *District Lodge No. 166 v. TWA Services, Inc.,* 731 F.2d 711, 715-16 (11th Cir. 1984) (finding no private right of action in the Service Contract Act because in part "it would be flatly inconsistent with the express provision of a limited governmental cause of action to imply a wide-ranging private right of action as an alternative to a governmental suit"); *Koren v. Martin Marietta Services, Inc.*, 997 F.Supp. 196, 211 (D. Puerto Rico 1998) (the SCA and CWHSSA do not provide employees with a private right of action).

-6-

**C.**     **The Remaining 23 Plaintiffs' Proposed Claims Under California Or Minnesota Statutes Fail As A Matter Of Law.**

The Court must reject Plaintiffs' contentions that Plaintiffs are entitled to overtime under state statutes adopted by California and Minnesota, because: (1) the States have no power to regulate wages paid to employees of federal contractors performing federal functions overseas; (2) the States have no power to regulate activities in foreign commerce, and (3) Plaintiffs cannot invoke the wage and hour laws of the State of their residence when they work elsewhere.

**1.**     **States have no power to regulate the performance of federal functions by federal government contractors.**

Plaintiffs seek leave to file a First Amended Complaint for work they describe as "effectively … civil service for the U.S. Military under the auspices of the President as Commander in Chief," (Opp. at 5), and performed solely in Iraq (Compl. ¶¶ 1, 8.a, 8.c, 8.e, 8.f, 14). *See* Opp. at 6-7. In making this argument, Plaintiffs affirmatively allege circumstances to which only federal law can apply.

Article VI of the Constitution of the United States provides that "This Constitution, and the laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land." *See McCulloch v. Maryland*, 4 Wheat. 316, 426, 4 L.Ed. 579, 606 (1819) (because the Constitution of the United States and the laws made in pursuance thereof are supreme, "they control the constitution and laws of the respective States, and cannot be controlled by them."); Const., Art. VI ¶2. As a result, "the authority of state laws or their administration may not interfere with the carrying out of national purpose. Where enforcement of state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way." *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103-104 (1940). Simply stated, "the activities of the Federal Government are free from regulation by any

-7-

state." *United States v. Mayo*, 319 U.S. 441, 445 (1943).

The Constitution delegates to Congress the power "[t]o raise and support Armies," "[t]o provide and maintain a Navy," and "[t]o make Rules for the Government and Regulation of the land and naval Forces." Const., Art. I, § 8. The President of the United States is the commander in chief of the federal armed forces. Const, Art II, §2. Thus, federal law and not state law, regulates the federal function involved in supporting and conducting military operations. When the federal government decides to hire private contractors to assist in the conduct of military operations overseas, neither the State of California nor the State of Minnesota can impose requirements regarding the hours in which the contractors' personnel can provide services, regarding the working conditions, or regarding the compensation paid by the federal government to the parties providing it.

It makes no difference that the party performing the federal function is a private contractor as opposed to an agency or employee of the federal government itself. "[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988). And authorization is found "only when and to the extent that there is 'a clear congressional mandate,' 'specific congressional action' that makes the authorization of state regulation 'clear and unambiguous.'" *Hancock v. Train*, 426 U.S. 167, 179 (1988).

The conclusion that state law cannot interfere with the performance of a federal function finds further support in *Boyle v. United Technologies, Inc*, 487 U.S. 500 (1988). Recognizing that "we have held that a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and

-8-

replaced, where necessary, by federal law," the Court ruled that state tort law was inapplicable to the manufacturer of a helicopter that crashed during a military exercise. *Boyle*, 487 U.S. at 504; *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1334 (11th Cir. 2003) (applying *Boyle* to service contract). In *Bynum v. FMC Corporation*, the court explained:

> The composition, training, equipping, and management of our military forces is a matter exclusively within the rights and duties of the federal government and, as a result, any interference with the federal authority over national defense and military affairs implicates uniquely federal interests of the most basic sort.

770 F.2d 556, 569 (5th Cir. 1985). Because of the unique federal interest affirmatively argued by Plaintiffs in their Opposition, the question of whether the Plaintiffs were entitled to overtime compensation is a question of federal law and federal law only.

> **2.** **States lack the power to regulate interstate and foreign commerce, a power delegated to Congress by Commerce Clause and State laws are presumed not to apply outside their own borders absent clear legislative intent.**

The Constitution further delegates to Congress the power to regulate interstate and foreign commerce, thereby precluding the States from doing so. *Glass v. Kemper Corp.*, 133 F.3d 999, 1000-01 (7th Cir. 1998) (Posner, C.J.) (extraterritorial application of Illinois' Wage Payment and Collection Act would "violate the negative commerce clause."). In *Mitchell v. Abercrombie & Fitch*, 2005 WL 1159412 (S.D. Ohio May 17, 2005), the court found that the extraterritorial application of Ohio's Minimum Fair Wage Standards Act would impermissibly burden interstate commerce and therefore rejected the plaintiff's claims under that act. *Id.*, at *4. The court stated "the Commerce Clause not only confers power on the federal government, 'it is also a substantive restriction on permissible state regulation of interstate commerce.'" *Id.*, at *3 (quoting *Dennis v. Higgins*, 498 U.S. 439, 447 (1991)). Furthermore, as *Mitchell* noted "States

-9-

are even more limited in their ability to legislate in areas that affect foreign commerce." *Id.*, at *3 (quoting *South-Central Timer Dev., Inc. v. Wunnicke*, 467 U.S. 82, 100 (1984)).

Furthermore, even if states have the power to reach beyond their borders, Plaintiffs' argument violates the presumption against extraterritorial application of a state's laws, including its state wage and hour statutes. *See Glass*, 133 F.3d at 1000-01 (holding that the Illinois Wage Payment and Collection Act could not apply extraterritorially absent clear legislative intent); *Priyanto v. M/S Amsterdam*, 2009 WL 175739, at **5, 6-8 (C.D. Cal. Jan. 23, 2009) ("*Priyanto I*") (noting that "there is a general presumption that California statutes are not given extraterritorial effect unless such intention is clearly expressed," and holding that nothing in the California Labor Code expressed a clear intent that the statute apply extraterritorially); *Mitchell*, 2005 WL 1159412, at *2-4 (noting that a state's laws are presumptively territorial and finding no clear expression of intent that Ohio's wage and hour law apply extraterritorially); *Rathje v. Scotia Prince Cruises, Ltd.*, 2001 WL 1636961, at *9 (D. Me. Dec. 20, 2001) ("The Maine legislature having expressed no clear intent to apply the statute in issue [the Maine Wage Statute] extraterritorially, it is inapplicable in this case.").

Plaintiffs respond to both of these arguments only by labeling them as "tangential," and then by attempting to distinguish the cases without addressing these arguments. *See* Opp. at 9-10. In particular, Plaintiffs fail to cite any provision in the California and Minnesota state wage and hour laws that they claim are applicable to this case that evidences a clear intent that the laws have extraterritorial application. In contrast, state and federal courts in California have expressly held that California wage orders have no extraterritorial effect because "there is nothing to indicate that the Legislature intended to give IWC wage orders extraterritorial effect." *Priyanto v. M/S Amsterdam*, 2009 WL 175739, at *6 (C.D. Cal. Jan. 23, 2009) (citing *Guy v. IASCO*, No.

-10-

B168339, 2004 WL 1354300, at *4-5 (Cal. Ct. App. June 17, 2004)); *Sarviss v. General*

*Dynamics Information Technology, Inc.*, 2009 WL 3326116, *12-13 (C.D. Cal. 2009) .

Similarly, the Minnesota Fair Labor Standards Act ("MFLSA") expressly limits the power of the

Commissioner of the Division of Labor Standards (the state official responsible for administering

and enforcing the MFLSA) to "employers of employees working in the state." *See* M.S.A.

§ 177.27. Thus, not only does the MFLSA contain no clear statement that it may be applied

extraterritorially, the statute clearly indicates that it is not intended to apply extraterritorially.

For this reason, Plaintiffs cannot state valid claims for overtime under the laws of California or

Minnesota even if they were to allege those claims in an Amended Complaint.

> **3.    Plaintiffs cannot invoke the wage and hour laws of a state in which they did no work.**

Ultimately, Plaintiffs contend that they can invoke the laws of a specific state merely by

virtue of being residents of that State. But it is the nature and location of the work and not the

residence of the plaintiff that determines the governing law.[5] Mere residency is not enough to

invoke a state's wage and hour laws when work is performed outside that state.[6] States have no

interest in imposing their wage and hour laws for work outside their borders.[7]

---

[5] *See Runyon v. Kubota Tractor Corp.,* 653 N.W.2d 582 (Iowa 2002) (Applying Iowa wage act to non-Iowa resident against non-Iowa employer for work performed in Iowa because "the [Iowa] statute's focus is not on an individual employee's state of residence or an employer's home office but whether the employee is 'employed in this state for wages by an employer.'").

[6] *See Tomlinson v. Checkpoint Systems, Inc.*, 2008 WL 219217, **9-10 (E.D. Pa. Jan. 25, 2008) (granting summary judgment on Pennsylvania wage act claim against Pennsylvania resident for work performed in New Jersey); *Tucci v. CP Kelco ApS, 2002 WL 31261054,* **2-3 (E.D. Pa. Oct. 10, 2002) (dismissing Pennsylvania resident's claims under Pennsylvania wage act for work performed predominantly in Delaware).

[7] *See Priyanto I*, 2009 WL 175739, *7 ("This court has found no decision applying any state's wage laws to nonresidents who did not work in the state, regardless of the other contacts.")*Killian v. McCulloch*, 873 F.Supp. 938, 942 (E.D. Pa. 1995) (granting summary judgment on Pennsylvania wage act claim against non-resident employees, working outside Pennsylvania, noting that: "The legislature has a strong interest in enacting legislation to protect

-11-

In *Pacific Merchant Shipping Ass'n v. Aubry*, cited by Plaintiffs, the Ninth Circuit concluded that California could validly require the payment of overtime wages to seamen who were otherwise exempt from overtime under the FLSA. 918 F.2d 1409, 1417 (9th Cir. 1990). The plaintiffs in *Aubry* were residents of California whose voyages began and ended in California, with no intermediate stops; they did not engage in voyages between foreign ports or between ports in different states. *Id.*, 918 F.2d at 1426-27. In other words, *Aubry* addressed the application of California wage and hour law to residents who were working in areas within California's territorial jurisdiction. It did not address the issue of whether a state's wage and hour laws could be applied to FLSA exempt employees who were not working within the territorial jurisdiction of the state.

The Ninth Circuit addressed this latter question in *Fuller v. Golden Age Fisheries*, 14 F.3d 1405, 1409 (9th Cir. 1994), where it held that Alaska's wage and hour laws could not be applied to seamen who were exempt under the FLSA and whose "predominant job situs was the high seas rather than the territorial waters of Alaska." *Id.*, 14 F.3d at 1409. The Ninth Circuit distinguished *Fuller* from *Aubry* because the *Fuller* employees worked outside the territorial jurisdiction of the state whose wage and hour laws the plaintiffs sought to apply, whereas employees in *Aubry* worked within the territorial jurisdiction of California.[8]

---

those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania."); *Hadfiled v. A.W. Chesterton Co.*, 2009 WL 3085921, **2-3 (Mass. Super. Sep. 15, 2009) (dismissing Massachusetts wage act claims for work performed in Africa); *Sawyer v. Market America, Inc.*, 190 N.C. App. 791, 796 (2008) (affirming grant of summary judgment on North Carolina wage and hour claims because Plaintiff worked outside of North Carolina because, *inter alia*, "[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918)), *rev. denied*, 362 N.C. 682 (2008).

[8] The District Court reached the same conclusion in *Coil v. Jack Tanner Towing Co., Inc.*, 242 F.Supp.2d 555 (S.D. Ill. 2002).

TCO 358,132,889v4 10-19-09

In the present case, as in *Fuller*, the Plaintiffs' worked outside of the territorial jurisdiction of the states whose wage and hours Plaintiffs seek to apply. Specifically, Plaintiffs admit that their work was performed entirely in Iraq (Compl., at ¶¶ 8.a-8.f.), which is clearly outside of the territorial jurisdiction of California and Minnesota. Accordingly, *Fuller*, not *Aubry*, is applicable to Plaintiffs' claims. As set forth above, *Fuller* supports a finding that Plaintiffs' state law claims are inapplicable.

As predicted by Defendants (Memo. at 8), Plaintiffs contention that California and Minnesota law can apply is premised entirely on their misapprehension of *Truman v. DeWolff, Bobberg & Assoc., Inc.*, 2009 WL 2015126 (W.D. Pa. July 7, 2009). *See* Opp. at 8-9 (describing *Truman* as "dispositive of the State Law issues").[9] Plaintiffs contend (erroneously) that neither California nor Minnesota restricts overtime benefits to work performed within the United States and, consequently and erroneously, concludes that "each of the California Plaintiffs was a 'California-based employee' and each of the Minnesota [sic] was a 'Minnesota-based' employee, just as in the Truman case." Opp. at 8. As discussed below, none of the Plaintiffs are "California-based" or "Minnesota-based," within the meaning of the *Truman* decision.

The Court in *Truman* relied on an earlier decision of *Friedrich v. U.S. Computer Systems, Inc.*, 1996 WL 32888 (E.D. Pa. Jan. 22, 1996), which applied the Pennsylvania wage statute to "**Pennsylvania-based employees** who perform work in states outside of Pennsylvania." *Truman*, 2009 WL 2015126, *2 (emphasis added), citing *Friedrich*, 1996 WL 32888, *8-9.[10]

---

[9] Although Plaintiffs contend that *Truman* is "too new to have an official cite," (Opp. at 8), it does not appear that *Truman* has been selected for official publication in F.Supp.2d.

[10] In *Friedrich*, the jury found that the plaintiffs were "based in Pennsylvania" because they were hired by the defendant's Pennsylvania office, reported daily to the defendant's Pennsylvania office, and received their assignments and checks from that same office. *Id.* at *8.

-13-

The *Truman* Court then distinguished the case of *Mitchell, supra*:

> The *Mitchell* case concerned application of the Ohio Minimum Fair Wage Standards Act to a Plaintiff who not only did all of his work outside of Ohio, but also did not reside in Ohio. The *Mitchell* Court found that the Ohio legislature did not intend the Act to apply to workers, "who performed *no* work within the territorial limits in the State of Ohio and that the Commerce Clause of the United States Constitution prohibits Ohio from regulating the working conditions of a non-resident who performs work and earns wages outside of the state."

*Truman*, 2009 WL 2015126, *3 (brackets omitted), citing *Mitchell*, 2005 WL 1159412, at *4. In *Truman*, "there [was] no doubt that Mr. Truman [was] a Pennsylvania-based employee" (id., at *3) because he was a Pennsylvania resident, **doing work in Pennsylvania**. 2009 WL 2015126, *4. Truman did not hold that any Pennsylvania resident was entitled to overtime under the laws of Pennsylvania for work performed entirely in a foreign country, nor did it hold that any resident is a "Pennsylvania-based employee."[11]

Here, these Plaintiffs allege that they contracted "to help the U.S. Army soldiers and U.S. Marine Corps marines fight the War on Terror <u>in Iraq</u> and/or other locations outside the United States such as Kuwait." Compl. ¶ 8a (underlining in original). Plaintiffs repeatedly confirm that such work was performed wholly "in Iraq." *Id.* ¶¶ 8b, 8c, 8e, 8f, 14. None of these Plaintiffs' work is alleged to have been based in any state in the U.S.[12]

---

[11] Indeed, as discussed *supra*, note 5, two Pennsylvania federal courts have already held the opposite: that residents cannot invoke their home-state's wage and hour laws for work performed outside of that state.

[12] In the Opposition, Plaintiffs contend that they actually did work in Virginia "for their testing and orientation before deploying to Iraq." Opp. at 8. That suggests that, if any state had an interest in Plaintiffs' pay, it would be Virginia. But, as Plaintiffs acknowledge, Virginia law does not entitle Plaintiffs to overtime. Plaintiffs do not allege in either the Complaint or the Opposition that they performed work under these contracts in California or Minnesota.

Plaintiffs attempt to obfuscate this issue by stating that seven (7) of them did work for defendants in California. *See* Opp. at 3 n.2. However, as Plaintiffs explain, that work is the subject of a separate lawsuit, *Hallak, et al. v. L-3 Communications Corporation, et al.*, Case No.

-14-

### C. Plaintiffs State No Claims, Even Under California And Minnesota Law.

#### 1. Plaintiffs' claims that Defendant failed to pay them all money due to them under common law must also fail, because those claims are based entirely on Plaintiffs' claims under the FLSA and state wage and hour law.

Plaintiffs' Opposition fails to address one of the most significant and fatal flaws in their conversion, breach of implied covenant of good faith and fair dealing, and fraud claims (Counts III, IV, and V of the Complaint respectively) - namely, that because those claims are all premised on Plaintiffs' claims under the FLSA and the alleged state wage and hour laws, they cannot survive if the FLSA and state wage and hour claims are dismissed. Plaintiffs' conversion, breach of implied covenant of good faith and fair dealing and fraud claims are based on the allegation that the L-3 Defendants incorrectly classified Plaintiffs as exempt employees and failed to pay them overtime wages to which they were entitled by law. Because Plaintiffs have not and cannot identify any valid sources of their alleged rights to overtime pay other than the FLSA and state wage and hour laws, if those statutory claims are dismissed, the Court must also dismiss Plaintiffs' common law claims.[13]

---

09cv1211 W CAB (S.D. Cal. 2009), and that work is not the subject of this lawsuit, which solely involves Plaintiffs' work in Iraq.

[13] Plaintiffs also suggest that if allowed to amend, they would add a claim under California Business and Professions Code § 17200. *See* Opp. at 12. Such a claim is likewise not cognizable, *inter alia*, if premised on conduct exempt under the FLSA, as the predicate for such a claim would be lacking. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1506 (where 17200 claim dismissed where predicate claim failed as a matter of law). Moreover, Section 17200 is also inapplicable to Plaintiffs because the conduct on which the claim is based (classifying Plaintiffs as overtime exempt employees) and the injuries it is alleged to have caused (failure to pay Plaintiffs overtime wages) occurred outside of the State of California. *See Churchill Village, L.L.C. v. General Elec. Co.*, 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000) (Section 17200 does not support claims where none of the alleged misconduct or injuries occurred in California) (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222, 85 Cal.Rptr.2d 18 (1999)). As the court in *Churchill Village* recognized, applying California law to claims involving acts and injuries that occurred wholly outside of California would raise significant due process problems. *Id.* In this case, the decision to classify Plaintiffs as overtime exempt, which forms the basis for their Section 17200 claim, was made by L-3 Services at its headquarters in Virginia.

-15-

2.      **Count three must be dismissed with prejudice because neither California nor Minnesota allow claims for conversion of wages.**

Neither California nor Minnesota allow claims for conversion based upon an alleged non-payment of wages.[14]

3.      **Count Four must be dismissed with prejudice because neither California nor Minnesota recognize a tort claim for breach of the implied duty of good faith and fair dealing in a contract case; and no claims exist in a case where the contract was not breached.**

Neither California nor Minnesota allows tort claims or punitive damages based upon breach of the implied covenant of good faith and fair dealing in employment contracts.[15] Notably, Plaintiffs attach an "exemplar" contract (Opp., Exhibit B), which demonstrates that Plaintiffs were offered a fixed salary.  (In Exhibit B, Plaintiff Hamad was paid $70,000 annually, plus additional amounts.)  Plaintiffs make no contention that the Defendants failed to honor the contracts.  Rather, Plaintiffs argue that, notwithstanding the express contracts, and

---

And the alleged injury occurred either in Virginia, where Plaintiffs' paychecks were issued, or in Iraq, where Plaintiffs were performing their work.  Accordingly, Section 17200 is inapplicable.

[14] *See e.g., Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451-452 (1997) (conversion claim will not lie for money unless a specific sum or fund is identified – a mere contractual right to payment will not suffice); *accord Vu v. California Commerce Club*, 58 Cal. App. 4th 229, 235 (1997); *see also Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008); *Vasquez v. Coast Valley Roofing, Inc.,* 2007 WL 1660972, at *10 (E.D. Cal. 2007); *In re Wal-Mart Stores, Inc.,* 505 F. Supp. 2d 609, 618-19 (N.D. Cal. 2007) and *Pulido v. Coca-Cola Enterprises, Inc.*, 2006 WL 1699328 (C.D. Cal. 2006); *Halla v. Norwest Bank Minnesota, N.A.*, 601 N.W.2d 449, 453-54 (Minn. App. 1999) ("Because cash is liquid and designed to be transferred, it is 'a subject of conversion only when it is capable of being identified, and described as a specific chattel.'"); *Olson v. Moorhead Country Club*, 568 N.W.2d 871 (Minn. App. 1997) (affirming dismissal of conversion claim for gratuities owed under MFLSA).

[15] *See e.g.*, *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683-693 (1988); *Freeman & Mills v. Belcher Oil Co.,* 11 Cal.4th 85, 102 (1995) (precluding tort recovery for non-insurance contract breach, overruling prior opinion in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752 (1984)); *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 858 (Minn. 1986) (holding that Minnesota law does not recognize implied covenants of good faith and fair dealing in employment contracts).

-16-

notwithstanding the express exemption under the FLSA, Defendants committed a tort by failing to pay wages beyond those specified in the contract. *See generally* Compl. Under California and Minnesota Law, if the Defendants have complied with the Contract, there can be no claim for breach of the implied covenant of good faith and fair dealing.[16]

### 4. Count Five must be dismissed with prejudice because plaintiff cannot state a claim for fraud under either California or Minnesota law.

The facts alleged in the Complaint also establish that the alleged statement on which Plaintiffs' fraud claim is based - that Plaintiffs were exempt under the FLSA (Compl. ¶¶ 34-36) - was true as a matter of law. Thus, based on their own allegations, Plaintiffs cannot plead the most essential element of a viable claim of fraud - that Defendants made a false representation.[17]

Moreover, even if Plaintiffs were to suggest that Defendants committed fraud by misrepresenting their status as overtime exempt employees, this would still be insufficient to state a claim against Defendants under either California or Minnesota law. Under Minnesota law, a statement of law or pure legal opinion cannot form the basis of a fraud claim.[18] Thus,

---

[16] *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994) (Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim); *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 503 (Minn. 1995) ("In Minnesota, the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract."); *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 376, 826 P.2d 710, 729, 6 Cal.Rptr.2d 467, 486 (Cal. 1992) (an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract).

[17] The elements of a fraud claim are: (1) a false representation, (2) of material fact, (3) made intentionally or knowingly with intent to mislead, (4) reliance on the representation by the claimant, and (5) resulting damage. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997); *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 532 (Minn. 1986). Because Plaintiffs were in fact exempt under Section 213(f) of the FLSA, Defendants could not have had any intent to deceive and Plaintiffs suffered no damages as a result of any alleged representations.

[18] *See Johnson v. City of Shorewood*, 2008 WL 434680, *10 (Minn. App. February 19, 2008) (noting that abstract statements of law or pure legal opinions are not actionable as

-17-

Plaintiffs cannot state a valid fraud claim against Defendants based on the pure legal opinion that Plaintiffs were exempt employees and therefore were not entitled to overtime. Furthermore, under California law, a worker cannot rely on the statement of his or her purported employer that he or she is not entitled to overtime, because the relationship between the two parties - employer and employee - is not the type of special confidential relationship that would, without more, allow the employee to rely on such representations. *Miller v. Yokahama Tire Corporation*, 358 F.3d 616, 621-22 (9th Cir. 2004).[19]

Plaintiffs have also failed to plead their fraud claim with the specificity required by Federal Rule of Civil Procedure 9(b). In particular, Plaintiffs have not addressed the argument that their Complaint must "specifically allege the time, place and nature of the fraud." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990). Instead, Plaintiffs attempt to blame the Defendants for Plaintiffs' own pleading failure. *See* Opp. at 12. In advancing this argument -- that Defendants are to blame "[b]ecause they have refused to cooperate in furnishing to Plaintiffs" (*id.*) various documents which may be requested in discovery[20] -- Plaintiffs fail to recognize that, unless they can articulate a **plausible** cause of action, Plaintiffs are **not entitled to discovery**. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive

fraudulent representations); *see also Dollar Travel Agency, Inc. v. Northwest Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn. App. 1984) ("Fraud must relate to past or existing fact and cannot be predicated on statements of intention or opinion.") (*citing Cady v. Bush*, 283 Minn. 105, 109, 166 N.W.2d 358, 361 (1969)).

[19] Similarly, under Virginia law, a fraud claim cannot be premised on a statement of what the law is or what the law will permit, because a party has no right to rely on any such statement. *Hicks v. Wynn*, 137 Va. 186, 198 (1923).

[20] Moreover, there is no indication as to how such discovery would begin to provide the information needed to try to support a fraud claim. To the contrary, Plaintiffs' exemplar contract demonstrates otherwise.

-18-

factual controversy to proceed") (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528, n. 17 (1983))).  Not only have Plaintiffs failed to allege any plausible claims, but the facts alleged by Plaintiffs -- and the arguments advanced in the Opposition -- demonstrate that Defendants are entitled to judgment in their favor.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' complaint in its entirety with prejudice for failure to state claims for which relief may be granted.

Dated:  October 19, 2009                Respectfully submitted,

/s/ John Scalia
John Scalia (VSB No. 46444)
Matthew Sorensen (VSB No. 65970)
GREENBERG TRAURIG, LLP
*Attorneys for Defendants L-3 Communications*
*Corporation, L-3 Communications Holdings, Inc.,*
*and L-3 Services, Inc.*
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel:  (703) 749-1300
Fax: (703) 749-1301
scaliaj@gtlaw.com
sorensenm@gtlaw.com

David S. Panzer (VSB No. 43085)
C. Allen Foster (*pro hac vice* forthcoming)
Eric C. Rowe (*pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
*Attorneys for Defendants L-3 Communications*
*Corporation, L-3 Communications Holdings, Inc.,*
*and L-3 Services, Inc.*
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tel:  (202) 530-8591
Fax:  (202) 331-3101
panzerd@gtlaw.com
rowee@gtlaw.com
fostera@gtlaw.com

-19-

Kathleen M. Wood (*pro hac vice* forthcoming)
Nicholas P. Connon (*pro hac vice* forthcoming)
*Attorneys for Defendants L-3 Communications*
*Corporation, L-3 Communications Holdings, Inc.,*
*and L-3 Services, Inc.*
CONNON WOOD SCHEIDEMANTLE, LLP
35 East Union Street, Suite C
Pasadena, CA 91103
Tel: (626) 389-3845
Fax: (626) 792-9304
kwood@connonwood.com
nconnon@connonwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2009, I electronically filed the foregoing

Reply Brief in Support of Defendants' Motion to Dismiss with the Clerk of Court using the

CM/ECF system, and that service was thereby accomplished on the following:

> Michael Green
> Margolis PritzkerEpstein & Blatt PA
> 110 West Road, Suite 222
> Towson, MD 21204
> Ph: 410-823-2222
> Fax: 410-337-0098
> Email: mgreen@mpelaw.com

/s/ John Scalia
John Scalia (VSB No. 46444)
GREENBERG TRAURIG, LLP
*Attorneys for Defendants L-3 Communications*
*Corporation, L-3 Communications Holdings, Inc.,*
*and L-3 Services, Inc.*
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel:  (703) 749-1300
Fax: (703) 749-1301
scaliaj@gtlaw.com
